UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. SEWELL, JR.,

    Plaintiff,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

CIVIL ACTION NO. 04 CV 72841 DT

DISTRICT JUDGE GEORGE CARAM STEEH

MAGISTRATE JUDGE VIRGINIA M. MORGAN

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security disability case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II. Background

Plaintiff filed an application for disability insurance benefits (DIB) on October 18, 2000, alleging that he was disabled due to arthritis in both knees, lower back and shoulder pain, diabetes, rotator cuff problems and bursitis. (Tr. 78, 89) Upon the denial of his application by the Social Security Administration (SSA), plaintiff requested a hearing before an administrative

law judge (ALJ). (Tr. 60-64, 66) The hearing was held on December March 20, 2003, before ALJ Regina Sobrino. (Tr. 559-600)

On May 17, 2003, the ALJ issued a decision denying plaintiff's application. (Tr. 13-23) The ALJ determined that plaintiff suffered from joint disease of the knees, diabetes, an organic brain disorder, a possible seizure disorder, and depression, and that his impairments were "severe" withing the meaning 20 C.F.R. § 404.1520, but that he did not have an impairment that met or equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 22) The ALJ further determined, based on the hearing testimony of a vocational expert (VE), that plaintiff retained the capacity to perform a limited range of sedentary work.[1] Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. Id.

The SSA's Appeals Council denied plaintiff's request for review of the ALJ's decision, which thus became the final determination of the Commissioner. (Tr. 6) On July 28, 2004, plaintiff filed suit for review of the Commissioner's determination pursuant to 42 U.S.C. § 405(g). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends in his motion that the ALJ posed an inaccurate

---

[1] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

hypothetical question to the VE at the hearing, that the ALJ did not give sufficient weight to the opinion of a treating physician, that the ALJ erred in assessing his credibility, and that a remand is warranted for consideration of evidence presented in the first instance to the Appeals Council.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment

meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

### A. Prior Claim

Plaintiff filed a prior application for DIB on June 30, 1997. ALJ William Musseman denied the application on March 17, 1999, and the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 30-37) Plaintiff sought judicial review of the decision. The district court granted summary judgment to the Commissioner, and the Sixth Circuit affirmed. The Commissioner's determination as to whether plaintiff was disabled on or before March 17, 1999, is thus final. Accordingly, the claim period for the purposes of this proceeding commenced on March 18, 1999.

### B. Accuracy of Hypothetical Question

The ALJ made the following findings with respect to plaintiff's residual functional capacity:

> Considering all of the evidence, it is reasonable to conclude that the claimant has the residual functional capacity to lift and carry 10 pounds. The claimant cannot push or pull. He is able to stand/walk 2 hours per 8-hour work day, for 10 minutes per hour. He can sit 6 hours per 8-hour work day. The claimant needs the opportunity to alternate positions at will. He needs to be able to use a cane to ambulate. He cannot climb, kneel, squat or crawl. The claimant cannot perform jobs that require work at or above shoulder level. He cannot operate foot or leg controls, work around hazards, or engage in commercial driving. He can occasionally bend. The claimant is limited to performing simple, routine work. He can tolerate superficial contact with co-workers, supervisors, and the general public.

(Tr. 20) The ALJ incorporated her RFC determination into the hypothetical she posed to the VE at the hearing regarding plaintiff's ability to engage in substantial gainful activity. (Tr. 593-95)

- 5 -

In response to the hypothetical, the VE testified that an individual with plaintiff's limitations was capable of performing sedentary, unskilled work. The VE cited as examples the following jobs: (1) video surveillance monitor, (2) visual inspector, (3) inspector, and (4) assembler. (Tr. 594-95) Plaintiff contends that the hypothetical was inaccurate in that the ALJ did not fully account for his deficiencies in the areas of concentration and memory.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding.

The ALJ determined that plaintiff's ability to maintain concentration, persistence, and pace was moderately impaired, and in order to accommodate plaintiff's deficiencies in this area, the ALJ included in the hypothetical a limitation that plaintiff could perform only simple, routine work. (Tr. 20, 594) Plaintiff contends that a restriction to simple, routine work is insufficient to accommodate his concentration and memory deficiencies. The court disagrees. A State of Michigan Disability Determination Services consultant reviewed plaintiff's file and indicated in a mental RFC form, among other things, that plaintiff was moderately limited in his ability to maintain concentration, persistence, or pace and in the area of understanding and memory. In the narrative portion of the form, the consultant indicated that plaintiff retained the ability to perform

simple, repetitive tasks. (Tr. 401-04) A second consultant who reviewed plaintiff's file agreed that plaintiff had concentration and memory problems, but that he was nonetheless capable of performing simple, routine work tasks. (Tr. 419) The consultants' determination that plaintiff retained the capacity to perform simple, routine or repetitive work tasks incorporated their findings regarding plaintiff's difficulties in the areas of concentration and memory. The ALJ, in turn, incorporated these findings into the hypothetical she posed to the VE by including therein the limitation recommended by the consultants. Accordingly, no further reference to plaintiff's concentration and memory limitations was necessary. In sum, the ALJ had a substantial basis in the record to conclude that plaintiff was moderately restricted in the area of concentration and memory and to conclude that a restriction to simple, routine work was sufficient to accommodate plaintiff's deficiencies in these areas.

Plaintiff also contends, with respect to the accuracy of the hypothetical, that the ALJ did not give sufficient weight to the findings of Dr. Thomas Rosenbaum, who performed a mental status evaluation of plaintiff on July 3, 2001. (Tr. 395-401) Plaintiff suggests that Dr. Rosenbaum found him to have "severe" concentration and memory deficits and that the ALJ erred in failing to include such information in the hypothetical. Contrary to plaintiff's assertion, Dr. Rosenbaum did not find that plaintiff had "severe" concentration and memory deficits. In the narrative portions of the report, Dr. Rosenbaum stated the following regarding plaintiff's difficulties in this area: (1) "[c]ognitive symptoms include difficulty with concentration, poor memory, especially short-term, difficulty sustaining focus, and frequent confusion," (Tr. 397), and (2) "there are indications for head trauma with associated dementia affecting his

concentration, memory, and attention span." (Tr. 399)  Dr. Rosenbaum did not render a functional assessment of plaintiff's concentration and memory capabilities or otherwise render any findings as to the severity of plaintiff's concentration and memory limitations.  Thus, Dr. Rosenbaum's report does not contradict or undermine the ALJ's conclusion that plaintiff had only moderate concentration deficiencies.  Dr. Rosenbaum gave plaintiff a Global Assessment of Functioning score (GAF) of 35-40, indicating serious psychological symptoms.  However, that score does not directly address plaintiff's capabilities in the areas of concentration and memory and, in any event, there is little in the report to justify a GAF score of 35-40.  Moreover, Dr. Rosenbaum was a consultant, not a treating doctor.  Thus, the ALJ was not bound to accord controlling weight to his opinion or to give it any more weight than that of the other consultants.

Based on the foregoing, the court finds that the record supports the ALJ's determination that a limitation to simple, routine work was sufficient to accommodate plaintiff's concentration and memory deficiencies.

### C. Treating Physician Opinion

Dr. Karl Edelmann, a treating physician, indicated in a form dated February 8, 2000, that plaintiff was totally and permanently disabled.  (Tr. 207)  Further, in a form prepared sometime in 2002, Dr. Edelmann indicated that plaintiff had been continuously disabled since June 2, 1995.  (Tr. 425)  Plaintiff contends that Dr. Edelmann's opinion that he is totally disabled is well supported by the record and uncontradicted and, therefore, the opinion is entitled to controlling weight.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997). Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, as is suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is otherwise inconsistent with other substantial evidence in the record. See Walters, 127 F.3d at 530.

As a treating physician, Dr. Edelmann's medical opinions fall within the scope of 20 C.F.R. § 404.1527(d)(2). However, his statements that plaintiff is totally disabled do not. As the regulations clearly indicate, the question of whether a claimant is disabled is reserved to the Commissioner. See 20 C.F.R. 1527(e)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that your are disabled"); see also, e.g., Workman v. Commissioner of Social Sec., 105 Fed.Appx. 794, 800, 2004 WL 1745782 (6th Cir.(Ky.))("A treating physician's conclusory statement that a claimant is disabled is not controlling because the ultimate determination of whether a claimant is disabled rests with the Commissioner"). Thus, the ALJ was not bound by Dr. Edelmann's statements that plaintiff was totally and permanently disabled.

Plaintiff has not otherwise shown that the ALJ failed to accord sufficient weight to Dr. Edelmann's medical findings. Consistent with Dr. Edelmann's findings, the ALJ determined that

- 9 -

plaintiff suffered from severe joint disease of the knees and diabetes. The ALJ included in her RFC determination and the hypothetical she posed to the VE numerous restrictions related to plaintiff's knee impairment, and plaintiff points to nothing in Dr. Edelmann's treatment notes from the relevant time frame indicating that his diabetes resulted in significant functional restrictions. Further, plaintiff does not contend that Dr. Edelmann diagnosed other "severe" impairments that the ALJ failed to consider. Thus, it appears from the record that the ALJ's findings as to the severity and functionally limiting effects of plaintiff's physical impairments were generally consistent with Dr. Edelmann's findings.

### D. Plaintiff's Credibility

With respect to the issue of plaintiff's credibility, the ALJ rendered the following determination:

> The medical evidence documents the existence of impairments that can reasonably be expected to produce pain, fatigue, and depression. However, the claimant's allegations of the intensity, persistence, and functionally limiting effects of his symptoms are not fully consistent with the objective medical and other evidence of record.

(Tr. 22) Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence.

In Walters, 127 F.3d at 531 (citations omitted), the Sixth Circuit stated that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by

substantial evidence." Further, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id. With regard to a claimant's assertions of disabling pain, the Sixth Circuit has established the following two-step test:

> First we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain rising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain.

Walters, 127 F.3d at 531.

Plaintiff testified at the hearing that he had significant memory and concentration deficiencies and that he experienced severe and constant pain in his knees, hands, shoulders, and back. There is no objective medical evidence in the record from the relevant time period indicating that plaintiff had hand, shoulder, or back conditions that could reasonably be expected to give rise to the level of pain to which plaintiff testified. On August 14, 2000, plaintiff complained to Dr. Edelmann that he was suffering from left shoulder pain. Dr. Edelmann diagnosed bursitis, placed plaintiff on ibuprofen, and recommended ice and gentle stretching. (Tr. 332) On March 21, 2000, plaintiff complained of radiating low back pain. Dr. Edelmann placed him on Anaprox, gave him a mild muscle relaxant, and recommended some range of motion exercises. (Tr. 333) These portions of the record certainly do not substantiate plaintiff's testimony regarding the severity of his back and shoulder pain, and there is otherwise no evidence that plaintiff complained of such conditions or sought treatment for them during the

claim period. Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990) (failure to seek treatment undercuts complaints of disabling pain). Further, there is no objective evidence in the record from the claim period of any hand impairment that could be expected to give rise to severe pain. To the contrary, on January 18, 2000, Dr. Edelmann conducted a physical examination of plaintiff and determined that plaintiff had full range of motion of his wrists and fingers and normal grip strength. (Tr. 335) These findings, together with the lack of objective medical evidence substantiating the existence of conditions that could give rise to severe hand, shoulder, and back pain, substantially undercut plaintiff's complaints regarding the severity of his pain in these areas. Moreover, the ALJ incorporated in the hypothetical restrictions that accommodate, at least to some degree, plaintiff's shoulder and back pain. Thus, the ALJ gave partial credit to plaintiff's testimony as to his back and shoulder pain, and to the extent the ALJ did not fully credit such testimony, she did not err in so doing.

With respect to plaintiff's complaints of severe knee pain, the ALJ limited him to sedentary work and included numerous restrictions in the hypothetical designed to accommodate his knee condition. Thus, as with plaintiff's complaints of shoulder and back pain, the ALJ gave at least partial credit to plaintiff's testimony regarding the extent of his knee pain. Further, to the extent that the ALJ did not fully credit such testimony, she did not err in so doing. From March 22, 1999, to October 4, 2002, plaintiff saw Dr. Edelmann, who was plaintiff's primary treating physician during the claim period, 34 times for check-ups and examinations for various ailments. There is not a single reference in Dr. Edelmann's rather copious treatment notes to complaints by plaintiff of severe knee pain. Plaintiff indicated on October 18, 1999, that his arthritis was

"bothering him recently," and Dr. Edelmann gave him a refill prescription for Vicodin. (Tr. 336) Plaintiff also received a Vicodin refill on November 8, 2001, and was told on September 27, 2002, that he could "return to the Vicodin." (Tr. 432, 437) Aside of these limited references, there is no indication in Dr. Edelmann's treatment notes, or elsewhere in the record, that plaintiff complained of, or sought treatment for, severe knee pain during the claim period. Further, while plaintiff used Vicodin, a relatively strong pain reliever, the record shows that he used it intermittently. In sum, while the record establishes, as the ALJ found, that plaintiff has "severe" knee impairments, it does not substantiate plaintiff's claim that he experienced such severe knee pain that he could not tolerate even the modest demands of restricted sedentary work.

Finally, plaintiff testified that he had difficulty concentrating for any length of time and that his memory was poor. The record substantiates that plaintiff has concentration and memory deficits, and, by the restrictions included in the hypothetical, it appears that the ALJ credited plaintiff's testimony regarding these impairments to some degree. However, the record, as it stood before the ALJ, does not demonstrate that plaintiff was so limited in these areas as to be unable to perform the limited range of sedentary work identified by the VE. Thus, to the extent the ALJ did not fully credit plaintiff's testimony regarding his concentration and memory deficits, she did not err in so doing.

Based on the foregoing, the court finds that there is substantial evidence in the record to support the ALJ's determination that plaintiff's testimony regarding the extent of his pain and functional limitations was not fully credible.

### E. Remand Based on New Evidence

Plaintiff submitted to the Appeals Council a report prepared by Dr. Robert C. Gunn following a psychological evaluation of plaintiff. In the report, which is dated October 23, 2003, Dr. Gunn stated that he administered intelligence and memory tests to plaintiff and that the test results showed that plaintiff's memory was impaired and that he was experiencing other cognitive losses as a result of an organic brain injury, which Dr. Gunn indicated was related to a prior vehicle accident.[2] Dr. Gunn further opined that plaintiff's "cognitive losses would preclude him from being able to work." (Tr. 558) Plaintiff requests that the matter be remanded to the Commissioner for further consideration of Dr. Gunn's report pursuant to sentence six of 42 U.S.C. § 405(g).

Sentence six of § 405(g) states, in part, the following:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner filed the Commissioner's answer, remand the case to the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

Thus, a sentence six remand is warranted where the claimant demonstrates the following: (1) that new, material evidence is available, and (2) that there is good cause for the claimant's failure to introduce the evidence in the proceedings before the ALJ. See, e.g., Willis v. Secretary

---

[2]Plaintiff was involved in an accident in December, 1996, in which his vehicle was struck by a train. Plaintiff was thrown from the vehicle. He sustained several broken bones and a head injury in the accident.

of Health and Human Services, 727 F.2d 551, 554 (1984). Further, as the Sixth Circuit stated in Foster., supra, 279 F.3d at 357 (citations omitted):

> For the purpose of a 42 U.S.C. § 405(g) remand, evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding. Such evidence is material only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. A claimant shows good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. As noted above, the burden of showing that a remand is appropriate is on the claimant.

Applying these standards, the report plaintiff relies upon in seeking a remand is certainly "new," as it did not exist at the time of the proceedings before the ALJ. However, the report does not satisfy the "materiality" or "good cause" requirements of § 405(g).

Dr. Gunn first examined plaintiff over four years after the operative disability onset date of March 18, 1999, and after the expiration of plaintiff's insured status. Thus, Dr. Gunn's report has little bearing on plaintiff's condition during the claim period. Further, aside of the evaluation conducted by Dr. Rosembaum, there is no indication in the record that plaintiff sought psychological treatment or evaluation during the claim period, and no indication that he requested a consultative exam. Given the fact that plaintiff's cognitive deficits purportedly date back to a 1996 vehicle accident, there is no apparent reason why plaintiff, who was represented by counsel throughout the administrative proceedings, could not have obtained further evaluations of his mental condition prior to the time the ALJ rendered her decision. In Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986), the Sixth Circuit

held that a claimant's request for remand under § 405(g) based on evidence obtained after the administrative hearing was properly denied because the claimant failed to show good cause for his failure to obtain the evidence prior to the hearing. In so holding, the Court stated the following:

> Oliver has also failed to satisfy the good cause requirement of Section 405(g). The additional medical reports were prepared after the Secretary's final decision and therefore could not have been presented at the hearing. While the dates on the reports alone seemingly satisfied the good cause test..., this circuit has taken a harder line on the good cause test.... [I]n order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing. In this case, Oliver does not have a valid reason for his failure to obtain a right quadricepts biopsy, a neuro-psychological examination, or a university neurologist evaluation prior to the hearing. Therefore, the good cause requirement has not been met.

Like the claimant in Oliver, plaintiff has offered no valid reason for his failure to obtain an evaluation of the sort conducted by Dr. Gunn prior to the administrative hearing. Accordingly, plaintiff has failed to satisfy the "good cause" requirement of § 405(g).

## V. Conclusion

The court, having rejected plaintiff's claims of error and having reviewed the record in its entirety, finds that there is substantial evidence therein to support the Commissioner's determination that plaintiff was not "disabled" within the meaning of the Social Security Act during the claim period in question. Further, the court finds that there is no basis for remand under § 405(g). Accordingly, the court recommends that the Commissioner's motion for

summary judgment be **GRANTED** and that plaintiff's cross-motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

Dated: FEB 2 5 2005

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

- 17 -

Lawrence Sperling, SS Adm
US Atty - Disability Claims Unit
on 2/25/05  /s/ Jjutt, Deputy Clerk